S. W. Cochran, S. J.,
delivered the opinion of the Court.
It appears from the record in this case, that James D. McLellan and Isabella McLean intermarried in 1831. That they lived together very affectionately, and by their industry and energy, accumulated an estate, worth *687 ffrom seventy to eighty thousand dollars. They had no ■children.
In Eebruary, 1852, he died of consumption, with which he had been afflicted for a considerable time. She survived him until October, 1857, when she died.
He left a will, dated the 23d of August, 1841, to which he made a codicil, dated the 26th day of January, 1852.
The operative words of the will are as follows: “I will and bequeath :to my dearly beloved wife, Isabella Caroline McLellan, all the property both real and personal, legal ,and equitable, that I may die seized or possessed of, or in any manner whatever entitled to; all the money, notes, accounts, ehoses in action, and every other species of property, that I may be entitled to, to her and her heirs forever, to dispose of as she may think proper.”
By the codicil, he makes two bequests to other persons — one for $1000, and one for $200.
This bill is filed by the brothers and sisters, and the heirs of deceased brothers and sisters, of James D. McLellan, who charge that before' and at the date of said will there was a mutual agreement and understanding between the testator and his wife, that at the death of the survivor, their property should be equally divided among their respective relations, giving one-half to his, and the other half to her relations. That in consequence of her promise to divide the estate at her death, he made his will, giving the whole of his estate to her in fee simple.
The conversations between the parties, their declarations and acts, proven, establish, very satisfactorily, the *688 fact, that such an agreement or understanding did exist between them. And the proof discloses the fact that he was very solicitous upon the subject. That when he was about to leave home, on a journey to Florida, for the benefit of his health, from which he did not expect to return alive, he exacted from her a renewal of the promise; and that upon hearing of his death she would have her will written, giving to his relations one half and to hers the other half of their property.
At her death she left a will, in which (with some inconsiderable exceptions) she gave the property to her relations and those of her deceased husband, but not equally. She gave more to the McLeans than to the McLellans.
The complainants seek an equal division of the estate between the two families, insisting that Mrs. McLellan took the estate clothed with a trust, in favor of his and her relations, equally, raised by the agreement or understanding between her and her husband.
It is insisted on the part of the defendants, that as the gift is absolute in the will, a trust cannot be raised by parol.
We are of the opinion, from authority, that such a trust can be created by parol agreement; and the agreement being in parol, must of necessity be proven by parol evidence. And that, in this case, Isabella 0. McLellan took the estate in trust, to be divided, at her death, equally between her relations and those of her deceased husband.
The subject and object of the testator’s bounty being subject to no uncertainty, and the proof of the agreement being satisfactory.
*689 The case of Padmore v. Gunning, 7 Simons, 644, is very similar to the case under consideration. The facts, as stated in that case, are, that the testator communicated to his -wife his desire and determination to give the whole of his property, real and personal, to his two natural daughters, after the death of his wife;. and upon receiving that communication, she proposed that he should leave his property to her, and undertook and promised that if he would do so, she would carry into effect his desire and determination in favor of his said natural daughters. And upon the faith of such undertaking and promise, he made his will, which, after other provisions, concluded thus: And as to the rest, residue and remainder of my estate, of every nature and kind, and all the property I have, I give, devise, and bequeath, the same to my dear wife, her heirs, administrators, and assigns, for her own separate use and enjoyment, having a perfect confidence she will act up to those views which I have communicated to her in the ultimate disposal of my property after her decease.” It was held that such a state of facts would- create a trust, wThich a Court of Equity would enforce.
Here was an absolute gift of the property, on the face of the will, and the trust wras created by a parol agreement. The clause that he had perfect confidence that she would act up to his views, &c., in the ultimate disposal of his property after her decease, could not aid in discovering what those views were. The objects of his bounty, and the manner of the disposal, were left to be discovered by parol evidence; and this provision tends to give a discretion to the devisee, to act up to his views or not. The terms are not imperative; *690 nor do they convey the idea of any provision on her part to act np to his views.
To the same effect, in principle, are the eases of Thynn v. Thynn, 1 Vern., 296; Drakeford v. Wilks, 3 Atkins’ Rep., 539; Wicket v. Raby, 3 Brown’s Parliamentary Cases, 16; and Richardson v. Adams & Wife, 10 Yer., 273.
The decree of the Chancellor sets np the trust, so-far the decree is right; but that part which excludes from the account the profits accruing after the death of James D. McLellan, and includes any of the estate converted or used by Isabella 0. McLellan in her lifetime, is erroneous.
An account of the estate- should be taken,, as it existed at the death of Isabella C. McLellan, giving one-half in value to the complainants, to- be divided among them according to the statute of descents and distributions; and commissioners will be appointed to- value the property and make the division.